SUMMARY ORDER
Appellant April Cody appeals the district court’s grant of summary judgment in her employment discrimination action brought pursuant to the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12101 et seq, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and New York Executive Law §§ 296 and 297. Cody argues, inter alia, that the district court erred in finding she failed to raise a question of material fact in dismissing her claims of disability discrimination and retaliation against Appellees County of Nassau and Nassau Community College (together, “Nassau County”).
Nassau County argues, inter alia, that the district court properly granted its motion for summary judgment. We assume the parties’ familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.
We review de novo orders granting summary judgment, and focus on whether the district court properly concluded that there was no genuine issue as to any material fact and the moving party was entitled to judgment as a matter of law. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir.2003). We are required to resolve all ambiguities and draw all inferences in favor of the nonmovant. See Nationwide Life Ins. Co. v. Bankers Leasing Assoc., 182 F.3d 157, 160 (2d Cir.1999). At the outset we note that Cody’s retaliation claim brought pursuant to Title VTI fails as a matter of law because although Title VII protects an employee from retaliation resulting from a complaint of discrimination based on “race, color, religion, sex, or national origin,” 42 U.S.C. § 2000e-2, it does not protect an employee on the basis of disability, see 42 U.S.C. § 2000c-3 (prohibiting an employee from “discriminating against any of his employees ... because he has made a change, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this [subchapter]”).
“The ADA prohibits discrimination against a ‘qualified individual with a disability because of the disability’ in the ‘terms, conditions, and privileges of employment.’ ” Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir.2005). At the time of the actions under review and the district court decision, “disability” was defined as: “(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.” 42 U.S.C. § 12102(2). (2008). The district court found Cody had impairments — osteoarthritis and generalized anxiety disorder — but concluded that Cody failed to produce evidence that her impairments imposed a substantial limitation on major life activities. On appeal, Cody challenges only the district court’s determination that she failed to offer sufficient evidence that she was regarded as having an impairment *719 that substantially limited her ability to perform major life activities.
Cody failed to present sufficient evidence that Nassau County regarded her as having “an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people’s daily lives.” Toyota Motor Mfg., Kentucky, Inc., v. Williams, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).
Judge Boyle properly dismissed Cody’s federal retaliation claim because she did not know sufficient temporal proximity between filing her NYSDHR complaint and the two termination notices. The district court properly held that Cody failed to offer proof from which a reasonable trier of fact could find a causal connection between Cody’s protected activity and any adverse employment action. The first complaint was filed August 21, 2001, but her first termination occurred more than a year later on September 12, 2002. She filed another complaint on October 8, 2002 and was not terminated again until March 6, 2003, approximately five months later. Cody alleges other adverse employment actions, i.e., (1) falsely accusing Cody of being absent without authorization, (2) threatening her with future counseling notices and disciplinary actions, (3) writing her up for leaving work early, (4) placing her on a medical review list, (5) issuing her a counseling notice while she was on leave, and (6) engaging in a pattern of conduct that created a hostile working environment including altercations, but as ably set forth by the district court, these are not adverse employment actions for purposes of a retaliation claim. Judge Boyle properly declined to address plaintiffs claim that assigning her to the night shift after she requested not to be so assigned was an adverse employment action because Cody was notified of the transfer to the night shift before she requested not be so assigned.
While the district court found that Nassau County’s timely receipt of Cody’s New York State Department of Human Rights complaints was insufficient to satisfy the notice requirements of New York General Municipal Law § 50-e, we need not reach the issue. Even assuming that Cody satisfied the notice requirements of § 50-e, Nassau County is entitled to summary judgment on Cody’s state law claims. As for Cody’s New York Executive Law § 296 retaliation claim, that claim fails for the same reasons as Cody’s ADA retaliation claim. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir.2002) (“NYHRL contain[s] similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA.”).
Aside from the broader scope of covered disabilities under New York Executive Law § 296, Cody’s state law reasonable accommodation claim is “governed by the same legal standards as federal ADA claims.” Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 117 n. 1 (2d Cir.2004). Nassau County is entitled to summary judgment because Cody has failed to adduce sufficient evidence to raise a material issue of fact as to whether her requested accommodation, i.e., transfer from the night shift at the Computer Center to the day shift, was reasonable. See Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir.1997) (stating that a “plaintiff can establish a prima facie case under [the ADA, and in turn, § 296,] by showing ... (3) that with reasonable accommodation, he could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations”). In particular, Cody has not produced sufficient evidence that her requested accommodation “facially achieves a rough proportionality be *720 tween costs and benefits.” Id. at 98-99. The record indicates that the costs of transferring Cody would be substantial. Cody does not contest that, given Nassau Community College’s sudden loss of two of its five computer operators, transferring her to the day shift would unnecessarily disrupt Rich Godeck’s schedule — and require his transfer to the night shift — and place Cody in close quarters with Kathy Flick, which previously resulted in Cody’s request for a transfer due to her inability to get along with Flick. Cody’s showing that her requested transfer would yield disability-related benefits, i.e., that the day shift would allegedly involve less physical strain and a more secure work environment, is too weak to raise a material issue in light of these undisputed costs.
As Cody conceded both in the supplemental briefing and at oral argument, it is unlikely that the ADA Amendments Act of 2008 (“Act”) applies to conduct that occurred before the Act’s effective date of January 1, 2009. We need not decide the retroactivity issue, however, as Cody waived the issue by failing to raise it in her original brief. Norton v. Sam’s Club, 145 F.3d 114, 117 (2d Cir.1998). Finally, as we find Cody’s ADA claim lacks merit, we need not reach the question of whether she complied with New York State’s notice of claim requirements.
We have considered all remaining claims and find them to be without merit.
For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.